IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES | ) |
| | ) CR 10-199 |
| | ) CV 18-676 |
| v. | |
| DOMINIQUE JACKSON | |

## OPINION AND ORDER

### SYNOPSIS

In this action, on March 21, 2014, a jury convicted Defendant of one Count of violating 21 U.S.C. § 846. On July 7, 2014, Defendant was sentenced to a term of imprisonment of 135 months, which was later reduced to 120 months pursuant to 18 U.S.C. § 3582(c). The Court of Appeals affirmed. Defendant filed a pro se Motion to Vacate pursuant to 28 U.S.C. § 2255, and following notice pursuant to United States v. Miller, 197 F. 3d 644 (3d Cir. 1999), he filed an Amended Motion to Vacate. Therein, he raises a wide variety of issues related to the effective assistance of counsel, including the failure to seek my recusal and trial counsel's alleged conflict of interest. For the following reasons, Defendant's Motion will be denied, and no certificate of appealability shall issue.

### OPINION

**I.  LEGAL STANDARDS**

Relief is available under Section 2255 only under exceptional circumstances, when the claimed errors of law are "a fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428, 82 S. Ct. 468, 7 L. Ed. 2d 417 (1962). A district court need not hold an evidentiary hearing on a Section 2255 motion if the motion, files, and records show conclusively that the defendant is not entitled to relief. United States v. Ritter,

1

93 Fed. Appx. 402 (3d Cir. 2004). "To progress to an evidentiary hearing, a habeas petitioner must do more than proffer gauzy generalities or drop self-serving hints that a constitutional violation lurks in the wings"; as a result, vague and conclusory allegations do not justify a hearing. David v. United States, 134 F.3d 470, 478 (1st Cir. 1998). Further, pro se pleadings are to be liberally construed, and I have considered Defendant's submissions accordingly. See United States v. Otero, 502 F.3d 331, 334 (3d Cir. 2007). In this case, a hearing is unnecessary, and the Motion will be disposed of on the record.

## II. DEFENDANT'S MOTION

### A. Pertinent Background

As Defendant acknowledges, this case involved serial representation by numerous defense attorneys. Initially, Patrick Livingston was appointed to represent Defendant at his initial appearance. Defendant then retained James Wymard, and the Court permitted Mr. Livingston to withdraw as counsel. At a hearing on January 3, 2012, Defendant requested the appointment of new counsel, and the Court granted his request. James Donohue was then appointed to represent Defendant. On January 28, 2013, Defendant filed a pro se Motion seeking to terminate Mr. Donohue's representation, expressing dissatisfaction for a variety of reasons. The Court granted Defendant's request, and appointed Christopher Capozzi as counsel. Mr. Capozzi later sought, and received, permission to withdraw from the case due to a conflict of interest. The Court then appointed William McCabe. Subsequently, Marcus Sidoti and Bret Jordan were retained, and Mr. McCabe withdrew as counsel as a result.

Soon afterwards, Messrs. Sidoti and Jordan moved to withdraw as counsel, citing irreconcilable differences and asserting that Defendant had terminated the attorney/client relationship. The Court initially denied the request, and a conference was held on September 13,

2

2013. At that time, the Court granted the attorneys' Motion to withdraw; Defendant advised that he did not want to proceed pro se, and the Court advised him that this would be his final appointment of counsel.

Subsequently, James Brink was appointed to represent Defendant. At Mr. Brink's request, Mr. Brink and Defendant participated in a status conference held on October 22, 2013. Mr. Brink subsequently withdrew as counsel, and Attorney Michael Cheselka was then appointed to represent Defendant. On the eve of trial, Defendant filed a pro se Motion to terminate Mr. Cheselka's representation. In his Motion, Defendant cited a complete breakdown in communication, and recited multiple avenues that he wished counsel to take, that counsel had not taken. The Court denied the Motion, by Memorandum Opinion dated March 14, 2014 ("March 14 Opinion"). Therein, the Court stated as follows:

> Mr. Jackson has cycled through nine experienced and competent attorneys, both appointed and retained. Defendant has been dissatisfied with prior counsel for reasons similar to those he raises now, with yet another lawyer. He cannot, however, force his attorney to present a defense with which the attorney does not agree, or repeatedly acquire new counsel until he finds one who agrees with him. ..The superseding indictment in this case was filed in 2010, and this matter has been continued multiple times at the request of the defense. I have repeatedly warned Defendant that there would be no further continuances, and that there are limits to changes of counsel…I find that Defendant's objections to current counsel do not constitute good cause requiring substitution of counsel.

March 14 Opinion, pp. 2-3 (citation omitted).

Trial proceeded beginning on March 17, 2014, with Mr. Cheselka as counsel. Following the jury's verdict, Defendant again filed a pro se Motion to have Mr. Cheselka withdrawn as counsel. Subsequently, Blaine Jones was appointed to represent Defendant. Prior to sentencing, citing irreconcilable differences, Mr. Jones then sought to withdraw as counsel. The Court denied the Motion. Following sentencing proceedings, Mr. Jones sought, and was granted, leave to

withdraw as counsel. Defendant filed a Notice of Appeal, and the Court of Appeals affirmed the decisions in this Court.

### III. DEFENDANT'S MOTION

As a preliminary matter, I note that the entirety of Defendant's Motion rests on his conviction, which it is apparent he holds deeply, that this Court and all counsel interfered with his autonomy, in terms of his ability to control trial strategy.

### I. Conduct of the Court

In support of his position that the Court so interfered, Defendant cites to the principles enunciated in Faretta v. California, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), and its progeny. Faretta "merely stands for the proposition that, after a defendant has clearly requested the opportunity to represent himself, a district court is obligated to explain his right to self-representation and to ensure that his decision to forego counsel is made knowingly and intelligently with awareness of the attendant consequences of that decision." United States v. Reed, No. 06-193, 2013 U.S. Dist. LEXIS 99, at *13 (W.D. Pa. Jan. 2, 2013).

Accordingly, "[t]he Sixth Amendment right to choose one's own counsel is circumscribed in several important respects." Wheat v. United States, 486 U.S. 153, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988). Relatedly, it is clear that under the law, the concept of a right to counsel of choice differs from the right to effective counsel. "The right of an accused to effective assistance of counsel, … does not extend to the appointment of counsel of choice, or to special rapport, confidence, or even a meaningful relationship with appointed counsel. … There is no right to counsel who will blindly follow the defendant's instructions." United States v. Jennings, 855 F. Supp. 1427, 1441 (M.D. Pa. 1994). Indeed, "[t]he right to counsel does not include more than the right to representation by competent counsel at trial." Siers v. Ryan, 773

F.2d 37, 44 (3d Cir. 1985). The Sixth Amendment provides the right to "reasonably effective" assistance. Strickland, 466 U.S. at 687. This right, it has been said, "must at times give way to the need for the fair and efficient administration of justice." United States v. Cicale, 691 F.2d 95, 106 (2d Cir. 1982).

Such a time arose in the case at bar, in which the Court accommodated multiple attorney changes due to Defendant's disagreements with his counsel, until the point at which Defendant's dissatisfaction posed an unreasonable threat of disrupting fair and efficient administration of justice. In these proceedings, the Court discussed with Defendant the option of proceeding pro se, and Defendant did not express a desire to do so; instead and multiple times, he sought different counsel, both retained and appointed. Defendant expressly and repeatedly stated that he did not wish to represent himself, and advised that he did not intend to retain counsel; he requested appointed counsel, and the Court repeatedly acceded to that request. The Court made clear to Defendant that he would, as well, be permitted to retain counsel. Patently, counsel was not forced upon Defendant in violation of Defendant's right to act on his own behalf in court, and Faretta is inapplicable here.

### A. Ineffective Assistance of Counsel

Defendant further suggests that counsels' conduct was ineffective because it violated his authority to make decisions in his case, in that counsel failed to follow Defendant's wishes regarding strategy. In the context of an ineffective assistance claim, a court should be "highly deferential" when evaluating an attorney's conduct; there is a "strong presumption" that the attorney's performance was reasonable. Strickland v. Washington, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "It is…only the rare claim of ineffectiveness of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's

performance." United States v. Gray, 878 F. 2d 702, 711 (3d Cir. 1989). To demonstrate ineffective assistance, a defendant must show both that counsel's performance was deficient, and that the deficiency caused him prejudice. Strickland, 466 U.S. at 697.

To show deficient performance under Strickland's first prong, a defendant must demonstrate that his attorney's performance fell below "the wide range of professionally competent assistance." Id. at 687. With respect to the prejudice prong, the pertinent question is "whether there is a reasonable probability that, absent the errors," the result would have been different. Id. at 695; see also Gray, 878 F.2d at 709-13 (3d Cir. 1989). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Therefore, speculation as to "whether a different . . . strategy might have been more successful" is not enough. Lockhart v. Fretwell, 506 U.S. 364, 113 S. Ct. 838, 843-44, 122 L. Ed. 2d 180 (1993). The prejudice prong of the inquiry rests on "whether counsel's deficient performance renders the result of the . . . proceeding fundamentally unfair," or strips the defendant of a "substantive or procedural right to which the law entitles him." Id. at 844.

Defendant takes the position that his attorneys' failure to proceed as Defendant wished – in his words, "failing to follow [Defendant's] express instructions regarding issues and objectives of his defense"—constitutes ineffective assistance of counsel. In so doing, Defendant conflates fundamental decisions, over which the client maintains control, with the attorney's realm of strategic or tactical decisions. Making strategic choices about how to achieve a client's objective (i.e., deciding what to ask a particular witness) differs from choosing that objective (i.e., deciding whether to maintain one's innocence) in the first instance. "Trial management is the lawyer's province: Counsel provides his or her assistance by making decisions such as 'what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude

regarding the admission of evidence.'" McCoy v. Louisiana, __ U.S.__, 138 S. Ct. 1500, 1508, 200 L. Ed. 821 (2018), (quoting Gonzalez v. United States, 553 U. S. 242, 248, 128 S. Ct. 1765, 170 L. Ed. 2d 616 (2008)). Other decisions, such as whether to plead guilty or forego an appeal, are reserved for the client. Id. As the Court of Appeals for the Fourth Circuit explained:

> A criminal defense attorney is obligated to follow his client's wishes only with regard to the fundamental issues that must be personally decided by the client. As to those limited issues--pleading guilty, waiving a jury, taking the stand, and appealing a conviction or sentence--"an attorney must both consult with the defendant and obtain consent to the recommended course of action." If the decision is a tactical one left to the sound judgment of counsel, the decision must be just that--left to the judgment of counsel. Counsel need not consult with the client about the matter or obtain the client's consent….[T]he law places certain tactical decisions solely in the hands of the criminal defense attorney. This reallocation of rights and duties is necessary to give effect to the constitutional rights granted to criminal defendants and to insure the effective operation of our adversarial system, where defense attorneys must protect the interests of their clients while also serving as officers of the court.

United States v. Chapman, 593 F.3d 365, 369-70 (4th Cir. 2010) (citations omitted).

Defendant suggests a variety of deficiencies covering a wide swath of his various attorneys and their conduct, from trial preparation to post-trial proceedings. Defendant's claims of error are voluminous, and it is not necessary to recite each claim seriatim. I have, however, considered each of his allegations, separately and in light of all of the attendant circumstances. Whether they relate to alleged straightforward errors by counsel, or errors of failing to adopt tactics that Defendant wished adopted, Defendant's claims must fail.

Several of Defendant's ineffective assistance claims must be rejected for reasons that merit only brief mention. Some of these, such as his Title III challenges, surround contentions rejected by our Court of Appeals, which extensively addressed Defendant's arguments regarding cellphone interceptions introduced at trial. United States v. Jackson, No. 14-3712 (3d Cir. Dec. 7, 2016). These claims cannot be relitigated on collateral review. United States v. Marrero, No. 9-208, 2017 U.S. Dist. LEXIS 211364, at *3 (W.D. Pa. Dec. 22, 2017). Moreover, those claims

7

not raised on direct appeal are procedurally defaulted, unless a defendant shows, inter alia, good cause for failing to raise the claims on appeal. Cristin v. Brennan, 281 F.3d 404, 409 (3d Cir. 2002). Further, "it is sufficient for [appellate counsel] to have raised those claims which she reasonably believed had the best chance of succeeding, even if other possible claims existed. … Counsel is required to exercise professional judgment with respect to an appeal." United States v. Wilson, Nos. 02-39, 2006 U.S. Dist. LEXIS 32118, at *6 (W.D. Pa. May 22, 2006). I have reviewed Defendant's appellate proceedings, and it is apparent that Defendant cannot meet Strickland's standard regarding appellate counsel. Defendant has not demonstrated grounds for concluding that he may relitigate already-decided issues, or that grounds exist for excusing any default.

Other claims that Defendant presses, such as those relating to counsel's conduct regarding witness testimony, motions, discovery, and trial objections, fall squarely within the category of trial strategy as discussed supra. Defendant asserts no ineffectiveness or interference with respect to the sort of fundamental, personal decisions that might fall outside this category. In that vein, "[c]ounsel's performance must be evaluated keeping in mind that an attorney's trial strategies are a matter of professional judgment and often turn on facts not contained in the trial record. … In this analysis, the court cannot take on the role of 'Monday morning quarterback.'" United States v. Tilley, No. 6-222, 2011 U.S. Dist. LEXIS 15844, at *3 (W.D. Pa. Feb. 17, 2011). Hence, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Virgin Islands v. Weatherwax, 77 F.3d 1425, 1431 (3d Cir. 1996). Importantly, "[r]easonable trial strategy does not constitute ineffective assistance of counsel simply because it is not successful." James v. Iowa, 100 F.3d 586, 590 (8th Cir.1996).

8

By way of illustration, there are many reasons that counsel might not decide to lodge objections that, in Defendant's words, "could be made." The decision to make a standing or running objection, for example, is a commonly-used approach to avoid annoying a jury or interrupting a desired flow of proceedings; the same is true with a decision not to object to leading questions or witness testimony. "It is well settled that a 'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'" Green v. Johnson, 116 F.3d 1115, 1122 (5th Cir. 1997). Having presided over these proceedings from pretrial through sentencing, the Court is assured that each instance of conduct now challenged by Defendant was not so ill-considered that it permeated the trial with obvious unfairness. In contrast, the entire record reveals that each attorney acted in comportment with Defendant's constitutional guarantees. The alleged errors, in this case, simply do not evidence a situation in which Defendant was essentially deprived of reasonably competent counsel.

Importantly, moreover, Defendant has not demonstrated a reasonable probability that the outcome would have differed had counsel acted differently in any of the respects urged. At most, Defendant's submissions give rise to speculation in that regard. The prejudice contemplated by Strickland is not present. Although Defendant suggests that the violation of his autonomy itself is structural error and inherently prejudicial, as discussed supra, Defendant was not deprived of the type of fundamental decision that might give rise to structural error.

**IV.    Bias**

Next, Defendant suggests that this Court appeared biased, and that counsel was ineffective for failing to seek my recusal pursuant to 28 U.S.C. § 455.

> The test for recusal under § 455(a) is an objective and requires recusal where a "reasonable person, with knowledge of all the facts, would conclude that the judge's

9

impartiality might reasonably be questioned." In re Kensington Int'l Ltd., 368 F.3d 289, 301 (3d Cir. 2004). The bias required before recusal is warranted under either subsection (a) or (b)(1), "must stem from a source outside of the official proceedings." Moreover, the Court of Appeals for the Third Circuit has made it clear that "a party's displeasure with legal rulings does not form an adequate basis for recusal."

Yunik v. McVey, No. 08-1706, 2011 U.S. Dist. LEXIS 32629, at *2-3 (W.D. Pa. Mar. 29, 2011) (citations omitted).

Defendant does not aver any grounds that would support a finding of extrajudicial bias, or identify any other grounds that would support recusal under Section 455. Defendant locates an appearance of bias in the allegation that I advised him, incorrectly, on several aspects of his case, and that I displayed hostility towards him. This conduct during the proceedings does not supply grounds for recusal. Further, he notes that I officiated at Government counsel's wedding ceremony. As was stated on the record during an October 22, 2013 conference, I officiated at a marriage ceremony at the Courthouse during regular business hours. "Recusal is required only when the stated facts establish a personal relationship of such magnitude that the judge cannot be impartial." United States v. Olis, 571 F. Supp. 2d 777, 786 (S.D. Tex. 2008). Judges commonly perform wedding ceremonies for members of the community, including the legal community, and recusal on such grounds alone is not warranted. Cf. Carter v. Chappell, No. 06-1343, 2013 U.S. Dist. LEXIS 37480, at *480-82 (S.D. Cal. Mar. 18, 2013).

Defendant has not stated any facts that would suggest that such a personal relationship is at issue here, and indeed it is not. Had counsel sought my recusal at any juncture on the grounds that Defendant now suggests, the request would have been denied. "[T]here is as much obligation upon a judge not to recuse herself when there is no occasion to do so as there is for her to recuse when there is." Svindland v. Nemours Found., No. 5-417, 5-441, 2009 U.S. Dist. LEXIS 74944, at *7 (E.D. Pa. Aug. 21, 2009). Defendant's claim of ineffective assistance regarding my recusal fails both prongs of Strickland.

### B. Attorney Cheselka

Finally, Defendant contends that his trial counsel, Mr. Cheselka, had an actual conflict of interest. Mr. Cheselka expressed concern regarding the source of funds used to pay his fees, after being questioned or "threatened" by the Government; Defendant states, however, that the funds were not from an illegal source. The crux of the argument is that counsel must have been conflicted, due to concerns about liability or forfeiture relating to his fee.

Conflict of interest questions, in this context, are analyzed under the Strickland standard, under which prejudice is presumed if an "actual conflict" exists. United States v. Livingston, 425 F. Supp. 2d 554, 558 (D. Del. 2006). "To establish an 'actual conflict of interest,' a defendant must show that his counsel advanced his own (or another client's) interest to the detriment of the defendant." United States v. Zhadanov, No. 93-240, 1998 U.S. Dist. LEXIS 13048, at *5 (E.D. Pa. Aug. 7, 1998). In other words, a defendant must show a specific and legitimate strategy was available to defense counsel, and the strategy was not pursued because it conflicted with counsel's personal interest. Karamanos v. United States, No. 04-171, 2005 U.S. Dist. LEXIS 25151, at *18 (D.N.J. Oct. 24, 2005). "[D]isputes regarding the choice of defense strategy, while unfortunate, are not conflicts of interest." Id. at *19.

In the first instance, the facts asserted by Defendant -- that Mr. Cheselka made an inquiry or expressed concern to Defendant and Defendant's family about the source of his fee -- does not give rise to any inference that Mr. Cheselka's self-interests were at odds with Defendant's interests. Moreover, a review of the trial transcripts reveals no suggestion that Mr. Cheselka, at an point or with any of the decisions that Defendant dislikes, advanced his own interests to Defendant's detriment. Defendant suggests, for example, that perhaps fear affected Mr. Cheselka's objections at trial. Such speculation is insufficient to meet applicable standards,

pertinent either to conflict of interest or Strickland. Defendant's contentions regarding Mr. Cheselka must be rejected.

## V. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C.§ 2253(c)(2), a "certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right." For the reasons stated supra, Defendant has not made the required showing. Therefore, a certificate of appealability will not issue.

## CONCLUSION

In conclusion, Defendant's Motion will be denied, and no certificate of appealability shall issue. The crux of his Motion is his palpable frustration that, in his words, "[t]hroughout it all [his] trial strategy was never followed…." However upsetting the course of events for Defendant, he has not demonstrated a fundamental defect or omission constituting a miscarriage of justice, or that was inconsistent with the rudimentary demands of fair procedure. To the contrary, in a difficult and lengthy proceeding, Defendant's constitutional rights were effectively observed and preserved by counsel and this Court. An appropriate Order follows.

BY THE COURT:

*[signature: Donetta F. Ambrose]*

_____

Donetta W. Ambrose
Senior Judge, U.S. District Court

Dated: April 11, 2019

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES )
) CR 10-199
) CV 18-676
v.

DOMINIQUE JACKSON

**ORDER**

AND NOW, this 11th day of April, 2019, it is hereby ORDERED, ADJUDGED, and DECREED that Defendant's Motions to Vacate [739][741] are DENIED. No certificate of appealability shall issue.

BY THE COURT:

_/s/ Donetta F. Ambrose_
_____

Donetta W. Ambrose
Senior Judge, U.S. District Court